NORD LIGHT, INC. *v.* UNITED STATES (No. 5071)\*

United States Court of Customs and Patent Appeals,
December 18, 1961

*Siegel, Mandell & Davidson* (*David Serko,* of counsel) for appellant.

*William H. Orrick, Jr.,* Assistant Attorney General, *Richard E. FitzGibbon,* Chief, Customs Section (*Richard H. Welsh,* trial attorney, of counsel) for the United States.

[Oral argument November 17, 1961, by Mr. Serko and Mr. Welsh]

\*C.A.D. 786.

Before RICH, Acting Chief Judge, and MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

SMITH, Judge, delivered the opinion of the court:

 The sole issue presented in this appeal is whether certain imported light fixture "pulleys" were properly classified under paragraph 397 of the Tariff Act of 1930 (19 U.S.C. 1001, par. 397), as modified by GATT (T.D. 51802) as articles or wares of metal–n.s.p.f., as assessed by the collector and found by the Customs Court (C.D. 2227) or whether, as contended by the importer, such "pulleys" should have been classified under paragraph 372 of said act as modified by the Torquay Protocol to GATT (T.D. 52739), as machines, finished or unfinished–n.s.p.f.

The competing paragraphs, as stated by appellant, are:

Assessed:

Paragraph 397, Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802:
"Articles or wares not specially provided for, whether partly or wholly manufactured:

\* \* , \* \* \* \* \*

Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer: \* \* \* Other \* \* \* 22½% ad valorem."

Claimed:

Paragraph 372, Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739:
"Machines, finished, unfinished, not specially provided for:

\* \* \* \* \* \* \*

Other \* \* \*
_____ 13¾% ad val."

The imported "pulleys" are used in suspended cable reels which are used for the adjustable vertical suspension of an object such as a lighting fixture. The reels are so designed as to permit their adjustment for use with suspended objects weighing between two and ten pounds. Each "pulley" as imported consists of a cylindrical spool rotatably mounted on a stationary axle supported in a mental frame. This "pulley" is placed inside a housing and a cable is threaded through one end of the housing and frame, then through a cable receiving passageway in the spool body of the "pulley" transverse to its rotational axis and then through the other end of the frame and housing. One end of the "pulley" spool has a chamber in which a coil spring is mounted. One end of the coil spring is secured to the body of the spool and the other end is secured to the stationary axle so that

[1] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'Connell, pursuant to provisions of Section 294(d), Title 28, United States Code.

rotation of the spool either winds or permits the unwinding of the cable. A chamber in the other end of the spool contains a one way pawl and ratchet clutch member. The clutch member comprises a ratchet hub which is independent of the spool body and is mounted on the axle. The ratchet hub has ratchet teeth which are engaged by pawls mounted on the spool body to prevent independent rotation of the spool relative to the hub in one direction while permitting it in the opposite direction. Adjustment of the "pulley" is effected by a wing nut threaded on the axle end adjacent the ratchet hub which permits varying the pressure exerted by an axle flange on the hub, thus varying the frictional resistance to rotation of the spool when the clutch is engaged. This construction permits the spool to rotate freely in the direction caused by the unwinding of the coil spring, but prevents its rotation in the other direction unless the frictional resistance on the ratchet hub is overcome.

In use, the cable threaded through the "pulley" is wound around the spool and one extending end is attached to a ceiling-mounted support bracket. The object to be suspended is attached to the other extending end of the cable. When the suspended object is lifted manually, the spool is rotated by the wound spring. This rotation causes more of the cable to be wound on the spool and thus shortens the overall length between the suspended object and the ceiling suspension point. During this movement the entire pulley mechanism and the suspended object are moved towards the suspension point. When it is desired to lower the suspended object, a downward pull reverses the direction of rotation of the spool which causes the cable to be unwound and thus increases the overall distance between the suspension point and the suspended object. During this movement, the ratchet and pawl clutch is engaged and provides a braking action on the spool. The spring is wound by the rotation of the spool as the cable is unwound. The suspended object is maintained in its adjusted position by reason of the frictional resistance of the ratchet hub which must be overcome by externally applied forces before the spool will further unwind the cable. The energy stored in the spring by the lengthening of the overall distance between the suspension point and the suspended object is released to rotate the spool and wind the cable when the said overall distance is shortened.

This court had occasion in *United States* v. *IDL Mfg. & Sales Corp.*, 48 CCPA 17, C.A.D. 756, to review numerous prior decisions dealing with the competing paragraphs here in issue. From this review we concluded:

While many items have been held to be, or not to be, "machines," there is no "judicial determination" of what a machine is. It remains simply a question of common meaning and each case must be decided on the basis of its own facts, technical and legislative.

The issue here, at is was in the *IDL* case, must be resolved on the basis of the common meaning of the word "machines" when applied to the technical facts of the present case.

As is apparent from the foregoing description, each "pulley" is composed of separate elements which, when assembled as they are in the imported "pulleys," permit the suspension of articles of varied weights and enables the user to lower or raise such suspended articles to a desired position within the pulley design limits.

The retraction of the cable and the raising of the "pulley" along the cable are automatic functions of the "pulley" mechanism and is the purpose for which it was designed. The automatic function results when the energy stored in the spring by the downward pull on the cable is released by a removal of such portion of the weight of the suspended object as is necessary to permit rotation of the spool by the action of the spring.

A common meaning of the word "machine," found in the dictionaries which we referred to in the *IDL* case, supra, is a device which may be either simple or complex, whose function is to increase the intensity of an applied force, or to change its direction, or to change one form of motion or energy into another form. Cf. The Columbia Encyclopedia, 2d Ed.

In view of the foregoing, the imported "pulleys" fall within the common meaning of the term "Machines" as generally understood and defined. We do not agree with the conclusion of the lower court that the imported "pulley" is not a machine on the premise that it is not "self-activating." There is no requirement either in the case law, the dictionaries or in other references brought to our attention that a device must be "self-activating" to be a machine.

We therefore hold that the imported "pulleys" are machines within the meaning of that term as used in paragraph 372 of the Tariff Act of 1930 as modified.

In view of the foregoing, the judgment of the Customs Court is *reversed.*

WORLEY, Chief Judge, was not present at the hearing and did not participate in the decision.